UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  06/30/2020
```

------------------------------------------------------------ X
D'AMICO DRY D.A.C.,                           :
                                              :
                              Plaintiff,      :          20-CV-3731(VEC)
                                              :
            -against-                         :          MEMORANDUM
                                              :          OPINION AND ORDER
MCINNIS CEMENT INC.,                          :
                                              :
                              Defendant.      :
------------------------------------------------------------ X

VALERIE CAPRONI, United States District Judge:

Defendant McInnis Cement Inc. moves pursuant to Supplemental Rule E for Admiralty

or Maritime Claims and Asset Forfeiture Actions to vacate a Rule B order of attachment on its

property in this district.  Specifically, it contends that the attachment is improper because

Defendant is subject to personal jurisdiction and service of process in this district or the District

of Connecticut.  Because the Court concludes that Plaintiff could not have reasonably served

Defendant with process within either jurisdiction, the motion to vacate is denied.

## BACKGROUND

McInnis Cement Inc. is a Canadian entity ("McInnis Canada") with affiliated entities that

manufacture and ship cement along the eastern seaboard of North America.  Ouellet Decl. (Dkt.

21) ¶¶ 5–6.  It distributes cement to its customers in the United States with the assistance of its

wholly owned subsidiary, McInnis USA, Inc. ("McInnis USA"), which is a Delaware

corporation headquartered in Connecticut.  *Id.* ¶¶ 6–7.  More precisely, McInnis Canada sells

cement to McInnis USA at a port in Canada; the subsidiary then transports the cement to a

terminal in the United States, from which it is distributed to McInnis's customers.  *Id.* ¶¶ 6,

12(c).  Due to that arrangement, McInnis USA is the importer of record for the cement.  *Id.* ¶ 12(c).

McInnis USA owns and maintains several shipping terminals in the United States, including one located in the Bronx.  *Id.* ¶ 12(a)–(b).  McInnis Canada financed the construction of the Bronx terminal, which has been operational since October 2018 and is used for storing and distributing cement to McInnis's customers in the New York area.  *Id.* ¶ 10.  The American subsidiary does not own the land on which the terminal sits—the two parcels are instead leased from the landlord, Oak Point Property LLC.  Ouellet Decl., Exs. 3, 4 (Dkts. 21-3, 21-4).  McInnis Canada acts as guarantor for the two Oak Point leases and, among other covenants, promises to be liable for unpaid rent in the event of the subsidiary's default.  *Id.*  Per the terms of the guaranties, McInnis Canada submits to the jurisdiction of this Court for any proceeding arising out of such agreements; service of process is to be effected by mail to McInnis Canada's corporate office in Montreal.  *Id.*, Ex. 3 ¶ 9; Ex. 4 ¶ 9.

In February 2017, Plaintiff d'Amico Dry d.a.c. ("D'Amico") entered into a charter party with McInnis Canada, for the latter to ship cement on a regular basis for approximately four years from Quebec to Rhode Island or New York.  Gross Decl. (Dkt. 4-1) ¶ 4.  The agreement was signed by d'Amico's CEO and McInnis Canada's vice president.  *Id.* ¶ 5.  Although McInnis USA did not sign the agreement, it was McInnis USA, through brokers, that negotiated the charter party with d'Amico's representatives.  *Id.*  Plaintiff does not dispute that McInnis USA was acting as McInnis Canada's agent for purposes of the negotiation.  *Id.*  After the agreement was signed, Plaintiff's communications concerning McInnis Canada's performance under the contract were primarily with McInnis Canada.  *Id.* ¶¶ 9–10.

2

Citing the COVID-19 pandemic, McInnis Canada declared *force majeure*, informing d'Amico in April 2020 that it intended to suspend shipments until at least September 2020. Compl., Ex. 2 (Dkt. 1-2).  d'Amico rejected the invocation of *force majeure*, served an arbitration demand, Compl., Ex. 3 (Dkt. 1-3), and commenced this action to attach McInnis Canada's property in order to satisfy any arbitral award, Compl. (Dkt. 1) ¶ 2.

On May 19, 2020, the Court granted Plaintiff's motion for an *ex parte* order of attachment pursuant to Rule B.  Dkt. 9.  McInnis Canada moved to vacate the attachment pursuant to Rule E, and the Court held a hearing on the motion on June 11, 2020.  Def. Proposed Order (Dkt. 12); Hearing Tr. (June 11, 2020).

## DISCUSSION

To maintain the Rule B attachment, Plaintiff bears the burden of establishing:

> (1) that the plaintiff has a valid *prima facie* admiralty claim against the defendant;
> (2) that the defendant cannot be found within the district;
> (3) that the defendant's property may be found within the district; and
> (4) that there is no statutory or maritime law bar to the attachment.

*Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 51 (2d Cir. 2008); *see* Fed. R. Civ. P., Supp. Adm. R. E(4)(f) ("[T]he plaintiff shall be required to show why the arrest or attachment should not be vacated.").  The parties dispute only the second factor: if McInnis Canada may be found within this district, then the Rule B attachment would be unnecessary and improper.  *See* Dkt. 17. A defendant is "found" within a given district if (i) it is subject to personal jurisdiction in that district and (ii) service of process may be effectuated with reasonable diligence within that district's geographical boundaries.  *STX Panocean (UK) Co. v. Glory Wealth Shipping Pte Ltd.*, 560 F.3d 127, 130 (2d Cir. 2009).

McInnis Canada is unquestionably subject to specific personal jurisdiction in this district. The Second Circuit has held that a single shipment of product into New York, combined with

3

other business activity aimed at the state, such as maintaining a website accessible to New York consumers, offering products for sale into the state, and facilitating the sale of products into the state, creates personal jurisdiction in New York.  *See Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 165–66 (2d Cir. 2010).  Here, McInnis Canada entered into a charter party to deliver multiple loads of cement into New York, and that transaction appears to be part of a broader pattern of business activity directed at New York, as evidenced by McInnis Canada financing the construction of a $100 million shipping terminal in the Bronx.  *See* Ouellet Decl. ¶ 10.  Finally, the Court notes that the charter party contains an arbitration clause providing that any arbitration would occur in New York, subject to New York law.  Compl., Ex. 1 (Dkt. 1-1) ¶ 35.  The arbitration clause is, therefore, direct evidence of McInnis Canada's purposeful availment of the benefits and protections of the state's laws.  Because the present dispute relates to McInnis Canada's contacts with this district, it is fairly subject to specific personal jurisdiction here.

Nevertheless, the attachment order must stand if Plaintiff could not, with reasonable diligence, have served Defendant with process within this district at the time the action was commenced.[1]  *ProShipLine, Inc. v. Aspen Infrastructures, Ltd.,* 585 F.3d 105, 112 n. 4 (2d Cir. 2009) ("The time for determining whether a defendant is 'found' in the district is set at the time of the filing of the verified complaint that prays for attachment and the affidavit required by Rule B(1)(b).").  The attaching party prevails on the service prong if it can show that it neither knew

---

[1]    Citing *Aqua Stoli Shipping Ltd. v. Garden Smith Pty Ltd*., 460 F.3d 434, 444–45 (2d Cir. 2006), *abrogated on other grounds by Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd*., 585 F.3d 58 (2d Cir. 2009), Defendant also argues that the attachment should be vacated if it is present and can be served in an adjacent jurisdiction, even if the requirements of Rule B are established.  Def. Br. (Dkt. 15) at 13–15.  Because this alternative argument rises or falls with the argument that McInnis USA is a general or managing agent of McInnis Canada, it will not be discussed separately in text.

nor "ought to have known" that the attached party could have been served within the district.[2]
*See Seawind Compania, S. A. v. Crescent Line, Inc.*, 320 F.2d 580, 582–83 (2d Cir. 1963).

Rule 4(h) allows for service of the complaint and summons on "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process."  Unlike its subsidiary, McInnis Canada has no corporate office or officer in this district, nor has it registered or designated an agent to receive process in this district.  Accordingly, the parties' only dispute is whether McInnis USA is qualified to accept service as "a managing or general agent" of McInnis Canada.[3]  *See* Fed. R. Civ. P 4(h).

Under both federal and New York law,[4] "[t]he well-established definition of a managing or general agent is '[a] person invested by the corporation with general powers involving the exercise of judgment and discretion, as distinguished from an ordinary agent . . . , who acts in an

[2]      *See also Andros Compania Maritima, S.A. v. Andre & Cie., S.A.*, 430 F. Supp. 88, 95 (S.D.N.Y. 1977) ("[A] defendant may 'be found within the district' and hence immune to attachment under Rule B(1) only if '(1) in personam jurisdiction can be obtained therein; and (2) he can, *with due diligence*, be served with process therein; and (3) at least where the defendant is a foreign corporation, it does sufficient business within the district to otherwise subject it to the jurisdiction of the court.'" (quoting 7A Moore, Federal Practice P B.06 at 252 (1976)) (emphasis added)); *Far E. Shipping Co. v. Progress Bulk Carriers, Ltd.*, No. 07-CV-11375, 2008 WL 2035788, at *1 (S.D.N.Y. Feb. 8, 2008) ("When a plaintiff claims that a defendant cannot be 'found' within a district, but an appropriate inquiry would have revealed otherwise, then vacatur is appropriate."); *Siderbulk, Ltd. v. M/S Nagousena*, No. 92-CV-3923, 1992 WL 183575, at *1 (S.D.N.Y. July 23, 1992) ("[W]e must assess not only whether defendant had an agent within the district, but whether plaintiff could reasonably have been expected to know the agent's identity.").

[3]      McInnis USA is undoubtedly subject to service within this district because it has appointed an agent for service of process and is registered with the New York Secretary of State.  Ouellet Decl. ¶¶ 3, 8.  The fact that McInnis USA is a wholly owned subsidiary of McInnis Canada, standing alone, does not enable Plaintiff to effect service on McInnis Canada by serving McInnis USA.  *See Sansui Elecs. Corp. v. Am. S. Ins. Co.*, No. 88-CV-6184, 1992 WL 77591, at *4 (S.D.N.Y. Mar. 26, 1992) ("It is hornbook law that service of process on a subsidiary does not constitute service on a parent corporation, nor does service on a parent constitute service on the subsidiary. Except in exceptional circumstances not present here, the law respects separate corporate identities even where one corporation may wholly own another." (citation omitted)); *see also RCC Ventures, LLC v. Brandtone Holdings Ltd.*, 322 F.R.D. 442, 447 (S.D.N.Y. 2017) ("[T]he parent-subsidiary relation alone ordinarily does not establish the necessary agency for making service on one through the other if the two maintain separate identities."  (quoting 4A Wright & Miller, Federal Practice and Procedure § 1104 (4th ed.))).

[4]      "[A] corporation may be served in the same manner allowed by the state in which the district court is located or service is made—here, New York."  *Oyewole v. Ora*, 291 F. Supp. 3d 422, 429 (S.D.N.Y. 2018) (citing Fed. R. Civ. P. 4(e)(1), (h)(1)(A)), *aff'd*, 776 F. App'x 42 (2d Cir. 2019).  Other than the general or managing agent theory, Defendant does not contend that any other means of service was available to Plaintiff.

inferior capacity and under the direction and control of a superior authority, both in regard to the extent of his duty and the manner of executing it." *Jiao v. First Int'l Travel, Inc.*, No. 03-CV-0165, 2004 WL 1737715, at *4 (S.D.N.Y. Aug. 4, 2004) (quoting *Taylor v. Granite State Provident Ass'n,* 136 N.Y. 343, 346 (1893)); *see also Grammenos v. Lemos,* 457 F.2d 1067, 1073 (2d Cir. 1972) ("A general or managing agent must be invested with powers of discretion and must exercise judgment in his duties, rather than being under direct superior control as to the extent of his duty and the manner in which he executes it."). In other words, a "managing or general agent" is "one who operates at [the organization's] highest levels, or . . . has overall authority to make high-level decisions on the part of the enterprise." *Cooney v. Barry Sch. of Law*, 994 F. Supp. 2d 268, 270 (E.D.N.Y. 2014); *see also Kwan v. Schlein*, 441 F. Supp. 2d 491, 496 (S.D.N.Y. 2006) ("New York law . . . largely mirror[s] federal law in requiring corporate service to be made upon an officer, director, agent, or similarly high-ranking corporate official.").

McInnis USA does not possess sufficient authority to act on McInnis Canada's behalf to qualify as its managing or general agent. While it is true that McInnis USA helped negotiate the charter party as McInnis Canada's agent, the record does not show that it had significant discretion during the negotiation. *See Dodco, Inc. v. Am. Bonding Co.*, 7 F.3d 1387, 1388 (8th Cir. 1993) ("[W]here a salesman was not vested with discretion in establishing prices, terms, or conditions of contracts or orders and any contracts entered into or orders taken were subject to company approval outside the state, the salesman was not a managing agent; and therefore, service upon that salesman would not be proper service on the foreign corporation he represents." (quotation marks and citation omitted)). McInnis Canada signed the agreement directly, rather than through McInnis USA, which indicates that the parent company supervised

6

and approved the terms of the transaction, rather than generally empowering the subsidiary to enter into charter parties on the parent's behalf.[5]  Indeed, counsel for McInnis Canada confirmed at the hearing that the subsidiary "really acts [at] the direction and under the control of the principal McInnis Cement."  Hearing Tr. (June 11, 2020) at 12.

To be sure, McInnis USA is responsible for significant business activity, including managing multiple terminals and distributing and selling cement to customers throughout the United States.  Those activities, however, are undertaken in its own name.  As revealed in McInnis Canada's declaration and at the hearing, McInnis USA purchases cement from McInnis Canada in Canada; thereafter, the cement is McInnis USA's property as it is transported to the United States and sold to the eventual customer.  *See* Ouellet Decl. ¶ 12(c); Hearing Tr. (June 11, 2020) at 8, 12.  McInnis USA's discretion, if any, in managing the shipping terminals (which it owns) or selling cement purchased from McInnis Canada is irrelevant to its status as a general or managing agent of McInnis Canada; there is no indication that McInnis USA either manages the parent's assets or makes decisions that would bind the parent.  Indeed, the record indicates the opposite.  For instance, McInnis USA, not McInnis Canada, is the tenant leasing the land for the Bronx terminal; although McInnis Canada agreed to guarantee the leases, McInnis Canada is not party to the leases, does not purport to be bound through agency principles, and does not own the terminal.  *See* Ouellet Decl. ¶ 12.  McInnis USA also purports to operate using its own bank accounts in which the parent has no interest.  *Id.*  Thus, McInnis Canada's conclusory claim that

---

[5]      For this reason, the rule that process may be served on the agent in charge of the business activity giving rise to personal jurisdiction over the principal does not apply.  *Cf. Diapulse Corp. of Am. v. Birtcher Corp.*, 362 F.2d 736, 741 (2d Cir. 1966) (holding that individual was *de facto* managing agent because he was in "complete charge" of the entirety of the principal's business in New York); *Bomze v. Nardis Sportswear*, 165 F.2d 33, 37 (2d Cir. 1948) ("[W]hatever activities make the corporation 'present,' the agent in charge of those activities is the 'managing agent' *pro hac vice*.").  Here, specific personal jurisdiction is not premised on McInnis USA's actions on behalf of McInnis Canada but instead on the parent's direct assent to the charter party.  Additionally, while McInnis USA facilitates the McInnis entities' business in the United States, it does not appear to be "in charge" of that business.

"Mcinnis USA acts as a managing and general agent for [McInnis Canada's] business activities in the states of Connecticut, Delaware, Maine, Massachusetts, New Jersey and New York" is not consistent with how the McInnis entities have chosen to do business. *See id.* ¶ 3.

Nor did Plaintiff know or have reason to know that McInnis USA was a general or managing agent. As far as the record shows, McInnis Canada never referred to McInnis USA as its general or managing agent during the negotiation of the charter party, nor does the charter party describe McInnis USA as a general or managing agent. *See generally* Compl., Ex. 1 (Dkt. 1-1); *cf. Metal Transp. Corp. v. Canadian Transp. Co.*, 526 F. Supp. 234, 235 (S.D.N.Y. 1981) ("The plaintiff had dealings with the general manager . . . when he signed the charter party on behalf of the defendant."). And, as discussed above, the mere fact that some employees of McInnis USA may have participated—through a third-party broker—in the negotiation of an agreement ultimately signed by the parent company does not demonstrate that the subsidiary is imbued with discretionary authority similar to that of a high-level corporate official. A review of McInnis Canada's guarantor agreements with McInnis USA's landlord also reveals that the parent company consented to service of process by certified or registered mail to its Canadian headquarters, not by delivery to McInnis USA; the subsidiary, therefore, does not appear to accept process on behalf of the parent as a matter of practice. Ouellet Decl., Ex. 3 ¶ 9; Ex. 4 ¶ 9. Thus, McInnis Canada did not expressly designate McInnis USA as a general or managing agent, nor were there any circumstances from which such a relationship could have been reasonably inferred. d'Amico therefore did not know, and could not have reasonably known, that McInnis USA was McInnis Canada's general or managing agent and that McInnis Canada could have been served by serving its subsidiary.[6]

---

[6]     The Court notes that d'Amico exercised reasonable diligence in ascertaining whether McInnis Canada could be found within this district, and none of the reasonably available information disclosed that McInnis Canada

In sum, McInnis Canada was not amenable to service through McInnis USA and therefore could not have been founded within this district.[7]  Because none of the other requisite Rule B factors is in dispute,[8] McInnis Canada's motion to vacate the order of attachment must be denied.

## CONCLUSION

For the foregoing reasons, Defendant's motion via order to show cause to vacate the Court's order of attachment is DENIED.  No later than **July 10, 2020**, the parties must file a joint letter explaining whether this case should be closed, and, if not, proposing next steps.

**SO ORDERED.**

Date:  **June 30, 2020**
       **New York, New York**                                **VALERIE CAPRONI**
                                                             **United States District Judge**

---

could be found here.  *See* Tisdale Decl. (Dkt. 5) ¶¶ 2–8 (detailing public records search and review of McInnis USA's lease).

[7]      McInnis Canada also contends that it may be found in the District of Connecticut, but that theory also depends on Plaintiff's ability to effect service through McInnis USA.  *See* Def. Br. (Dkt. 15) at 15.  Defendant's argument as to the District of Connecticut therefore fails for the same reason: McInnis USA is not McInnis Canada's managing or general agent.

[8]      In its papers, McInnis Canada contends that one of the assets sought to be attached is a bank account belonging to McInnis USA, not McInnis Canada.  Def. Br. at 15.  Having disclaimed any property interest in the account, Defendant has since acknowledged that any complaint about the attachment of that account should be raised by McInnis USA, the accountholder, which has yet to appear in this action.  *See* Hearing Tr. (June 11, 2020) at 23 (defense counsel acknowledging that "McInnis U.S.A. would be the party that would come in to contest" any attachment of the subsidiary's bank account).  Accordingly, the Court need not decide at this juncture whether any money in McInnis USA's account belongs to McInnis Canada (and could therefore be attached) or whether Plaintiff is justified in attaching the subsidiary's assets.